[See Case No. 16,264.]

---

## Case No. 16,266.

UNITED STATES v. SHAW et al.

[1 Cliff. 317.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1859.

CONTRACTS BY UNITED STATES—RESCISSION—AUTHORITY OF DEPARTMENTAL OFFICERS—CONTRACTS BY CORRESPONDENCE.

1. Contracts made by the United States, through the secretary of the navy, to furnish provisions for the naval service, cannot be rescinded by the chief of the bureau having charge of such contracts and supplies, without the sanction of the head of the department.

2. Evidence that the chief of such bureau informed a contractor that a written proposition to rescind such a contract, if forwarded to him, would be laid before the secretary. is no defence to an action to recover damages for the non-fulfilment of the same. although it appears that the proposition was duly made, and

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

that it was retained six months, and not answered.

3. If a contract is to be sought in correspondence, or if the discharge of a right or obligation is to be deduced from it, then the court, and not the jury, must construe the correspondence, although it may extend over a considerable length of time, and embrace a great variety of circumstances.

Error to the United States district court of Massachusetts.

The action was upon a contract dated October, 1851, for the delivery, at his own risk and expense, free of charge, to the plaintiffs, at their navy yard in Brooklyn, between the 1st of January, 1852, and the 1st of May of the same year, of twelve hundred barrels of pork, of a specified quality, at a stipulated price, and in case of failure that the defendant and his sureties were to pay liquidated damages.

Among other defences, the defendants [James M. Shaw and others] pleaded as their fourth plea that, in April, 1852, they being willing to perform their contract, but plaintiffs not being ready to receive performance, the parties thereupon agreed to discharge each other. Issue was joined on this plea, and a verdict was rendered for defendants. The defendants exhibited a power of attorney from Shaw, their principal, dated May 12, 1852, to one Wilson, by which the latter was empowered to negotiate with the chief of the bureau of provisions and clothing in the navy department, concerning those contracts dated October, 1857, for the delivery, among other things, of pork at Brooklyn, and to renew contracts, or to annul entirely said contracts, or either of them, vary the terms of either of them, or to agree to any arrangement in his name with the chief of the bureau that he might deem expedient. The attorney had two interviews with Mr. Sinclair, the chief of the bureau. On the 18th of May, he advised his principal of the result by letter, from which the following is an extract:— "Mr. Sinclair says they have a good supply of pork, and should probably need no more for consumption before another summer; and if you wish to cancel that part of the contract, he should be happy to accommodate you. I told him you had begun to provide for the pork, and would be ready to deliver it at the prescribed time, but that you were dissatisfied with the treatment you had received from the inspectors, and I felt at liberty to say you would accept his proposition, and give up the contract entirely. He replied he did not need the pork, and would rather it would not be delivered, as he did not wish to keep over any more than he could help. He says you must make a written proposition to him to the effect that you are desirous to give up the contract for pork, and he will lay your communication before the secretary of the navy; and if you are not advised to the contrary, you may consider the pork contract at an end. I am also satisfied it is a good arrangement for you, especially when you take into consideration the trouble that always occurs in regard to the inspection of government merchandise. If you like my arrangements, just write to him to that effect, and also write to me at Newport, where I hope to be in the early part of next week. I shall leave here (Washington) to-morrow, for Baltimore," &c. In his testimony, the attorney affirmed the accuracy of this statement, and said in the second interview Mr. Sinclair stated that Shaw need not deliver the pork.

B. F. Hallett, for plaintiffs.

H. F. Durant, for defendants.

CLIFFORD, Circuit Justice. Upon this testimony it is difficult to find support for the plea. The attorney does not assume to agree to a cancellation of the contract, but merely solicits information whether the officer would be willing to do it, in order to communicate that fact to his principal. If the contract had been dissolved, there is no reason why the papers should not have been drawn for that purpose at that time. But the attorney refers the whole subject to his principal, and another act on the part of the principal is required before the arrangement can be treated as complete. This interpretation of these conversations receives full confirmation from the subsequent interview between the department and the defendant. On the 24th of May, Mr. Sinclair writes to him as follows: "Respecting your contract for pork, if you will make a direct proposition to the bureau, the same shall be submitted to the secretary of the navy for his consideration and directions in the case." Here is explicit evidence that nothing conclusive had resulted from the interview between the chief of the bureau and Wilson, at least in the opinion of the former, and the reply of Shaw two days afterwards is equally explicit in evincing his understanding. He says: "Your letter of the 24th instant has been received and noticed. I am now making inquiries and arrangements for beef. In regard to my contract with your bureau for pork, I will suggest for your consideration, first, to extend the time of delivery; second, to relinquish the pork contracts altogether. Waiting your early reply, I am," &c., &c. There was no reply to this letter, and no further correspondence, until the 30th of November, 1852. On that day the chief of the bureau writes to the defendant: "You are required to deliver to the navy yard, Brooklyn, New York, the pork in accordance with the stipulations of your contract, and should you fail to do so by the 10th of December next, the bureau will direct a purchase of such quantity as may be required at your risk and cost." The question arises here, did the failure of the department to answer the letter of the 26th of May operate a rescission of the contract, whether considered alone or in con-

nection with the testimony of Wilson? Two alternatives were presented by the letter for the consideration of the navy department, in respect to the terms of an existing contract, but it retains for the writer the power to accept or reject the offer which was anticipated as the result of that consideration. Neither alternative is proposed by the writer in such a manner as to conclude himself. He reserves the right to have the last word. Nor does the testimony of Wilson put a different face upon the matter. Wilson learned from the chief of the bureau of the willingness of the head of the department to accommodate the obligor by discharging the contract, and invited a proposition for that purpose. Subsequently, in a letter to the principal, he asks for a communication on the subject. That communication was made, but no action took place upon it, and it is equally clear that the remark of the chief of the bureau to Wilson, "that he would lay the communication of Shaw before the secretary of the navy, and if he (Shaw) was not advised to the contrary, he might consider the contract at an end," cannot properly be incorporated into the subsequent correspondence. Shaw's letter was not written as a sequel to the communication of Wilson, nor does it properly form a part of the negotiation commenced by him. It is an answer to a letter from Sinclair directly, and presents two distinct subjects for consideration merely, and the writer asks an early reply. Under these circumstances, it could not be maintained by the United States with any success that the omission of the chief of the bureau to examine or answer the overtures of the writer of the letter was an abrogation of the contract, either when considered singly or in connection with the testimony of Wilson; and, in the judgment of this court, the evidence does not show a rescission of the contract by mutual consent. The plaintiffs requested the court to instruct the jury that the testimony of Wilson and the correspondence did not in law amount to a cancelling or rescinding of the contract. But the court declined so to instruct the jury, but did instruct them that the question for them to decide was, whether the evidence shows only an extension of the time of delivery, or a giving up of the contract by mutual agreement, when said Shaw was ready and offering to fulfil it, and before the time had expired, and unless the contract was given up, the jury must find for the plaintiffs. It was for the defendants to make out that there was a valid and binding agreement for the cancellation of this contract. His evidence shows that a subordinate officer in the navy department intimated to the agent that this was feasible. But in this conversation, as well as in the subsequent correspondence, he declared that the head of the department must be consulted. In effect, the principal submitted two subjects for the consideration of the de-

partment, and asked for a reply. But the department retained the letter six months, and then demanded the fulfilment of the contract. There is nothing that can be drawn from these facts, except an acquiescence of the department in a delay for that period of time. It is the duty of the court to construe written instruments, and that principle is not affected by the fact that the instruments consist of written correspondence extending over a considerable length of time, or that it may embrace a great variety of circumstances. If a contract is to be sought in such a correspondence, or if the discharge of a right or obligation is to be deduced from it, the duty must be performed by the court, and not by the jury. Bliven v. New England Screw Co., 23 How. [64 U. S.] 420; Begg v. Forbes, 30 Eng. Law & Eq. 508; Hutchinson v. Bowker, 5 Mees. & W. 535. Decided cases undoubtedly may be found, in which it has been held, that where the effect of a written agreement collaterally introduced as evidence depends, not merely upon the construction and meaning of the instrument, but upon extrinsic facts and circumstances, the inferences of fact to be drawn from it must be left to the jury. It was so held by the supreme court in Etting v. Bank of U. S., 11 Wheat. [24 U. S.] 75; and in Barreda v. Silsbee, 21 How. [62 U. S.] 168. But the principle involved in those decisions has no application to the present case. As the decision of this question will probably be decisive of the case in another trial, I abstain from examining any other questions at the present time.

Judgment reversed.