SEA INS. CO. OF LIVERPOOL, ENGLAND, Limited, v. JOHNSTON et al.

(Circuit Court of Appeals, Fifth Circuit, December 11, 1900.)

No. 961.

1. INSURANCE—RESCISSION OF CONTRACT.
   A provision of an insurance policy giving either party the right to cancel the same on 30 days' notice to the other does not prevent the parties from rescinding the contract by mutual consent at any time without such notice.

2. SAME—CONSTRUCTION OF CORRESPONDENCE.
   An insured firm holding an open policy wrote the insurer returning a bill for premiums earned, and asking a reduction in the same, stating that, unless the rate were reduced, they "could not go on," as their business would not stand such a rate. The insurer answered, again sending the bill, stating that it could not make the reduction, and asking that, if the insured decided not to continue using the policy, it be returned. The insured replied, inclosing the policy and a check for the amount of the bill, saying: "We inclose check and policy, which we suppose will conclude the whole matter. If we are mistaken, please return the check." The check was retained and cashed. *Held*, that the effect of such correspondence was to rescind the contract of insurance by mutual consent.

3. TRIAL—PROVINCE OF COURT AND JURY—CONSTRUCTION OF WRITTEN EVIDENCE.
   Where the determination of a case depends upon the construction of written correspondence, the genuineness of which is conceded, in connection with facts which are undisputed, and the oral evidence is such that different inferences cannot be drawn from it, it is the duty of the court on request to direct the verdict.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

E. B. Kruttschnitt (E. H. Farrar and B. F. Jonas, on the brief), for plaintiff in error.

J. D. Rouse (Wm. Grant, on the brief), for defendants in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. This is an action on a fire insurance policy, and is brought by Johnston Bros., a commercial firm composed of Charles A. Johnston, a citizen of the state of Mississippi, and Harrison R. Johnston, a citizen of the state of Alabama, against the Sea Insurance Company, Limited, of Liverpool, England, a corporation created and existing under the laws of Great Britain. The policy sued on was issued August 31, 1898, by the Sea Insurance Company to Johnston Bros. to insure them against loss or damage of their cotton by fire during the year following the date of the policy. It was an open policy, and was to cover cotton to be afterwards declared by the insured. Johnston Bros., having 4,000 bales of cotton at West Point, Miss., declared 2,000 bales of them as covered by the policy. This declaration contained no specific description of the cotton. Johnston Bros. were authorized by the terms of the policy to issue certificates under it for such cotton as they might

ship on their own account or for others, making the loss, if any, payable to the holders of the certificates. These certificates, when issued, and proper notice thereof given to the insurance company, became separate obligations,—"petite policies,"—and were payable and enforceable just as a coupon would be separately payable and enforceable when clipped from the bond. A number of bales of cotton were insured under such certificates issued by Johnston Bros. It is conceded by both parties that such certificates created distinct obligations. This controversy has no reference to them. The premiums on those certificates which Johnston Bros. had issued were included in the bill rendered by the insurance company on January 14th up to that date, and such premiums were paid by the check inclosed in the letter of Johnston Bros. of February 21st. The entire contents of these letters will be stated later. No premium had been paid on the main policy,—the one in suit. These certificates, or petite policies, are not involved in this action. On the 6th of March, 1899, Johnston Bros. having then about 1,376 bales of cotton at West Point, Miss., the same were destroyed by fire, resulting in a loss of about $47,099.17. This loss was covered by insurance in the Atlantic Mutual Insurance Company of New York to the amount of $25,000. This action is to collect the remainder of such loss, $22,-099.17, with interest at 6 per cent. per annum from March 20, 1899. The insurance company admitted in its answer the execution of the policy, but alleged that prior to the fire on March 6, 1899, the policy, by the mutual agreement of the parties, had been surrendered and rescinded, and all obligations thereunder terminated; and that, if the policy had not been so terminated and annulled, no cotton or other property to which the policy had ever attached was included in the cotton alleged to have been destroyed by fire. Upon this petition and answer the case was tried before a jury. A verdict for Johnston Bros. for $22,099.17 was found, and from a judgment thereon the Sea Insurance Company sues out this writ of error.

The unmaking of a written or oral contract is, of course, within the power of those who made it. The parties who make the contract can rescind it, but it requires, to accomplish this, the same concurrence of their wills which is required to make a contract. Mutual release from the old contract is an adequate consideration for the rescission. This doctrine is applicable to the contract of insurance. Bish. Cont. (2d Ed.) §§ 812, 813, 815; Joyce, Ins. § 1637; May, Ins. (4th Ed.) § 67. The contract of insurance in this case contains this language: "Either party at liberty to cancel upon giving 30 days' written notice to that effect, but without prejudice to any risk pending at the termination of that period." This provision is intended to authorize either party to cancel the contract without the consent of the other. It has no bearing on the question of rescission by mutual agreement. In Insurance Co. v. Phinney, 178 U. S. 327, 20 Sup. Ct. 906, 44 L. Ed. 1088, the court was dealing with a case in which a state statute was cited which declared that no life insurance company doing business in that state should have power to declare forfeited or lapsed any policy hereafter issued or renewed by reason of the nonpayment of any annual premium. The

court held that, if such statute was controlling in the case, it did not prevent the parties from dealing with the contract of insurance as with any other contract; and that, if they chose to abandon it by mutual agreement, their action was conclusive notwithstanding the statute. It is clear, we think, that the provision which we have quoted from the policy does not prevent the parties from rescinding it as they could rescind any other contract. Albert Willcox & Co. were the authorized agents of the Sea Insurance Company to make the contract of insurance in question, and were fully authorized to represent that company in all things connected with the policy. The following correspondence between Johnston Bros. and Albert Willcox & Co. was made an exhibit to the answer of the insurance company, and offered in evidence on the trial of the case:

"Columbus, Miss., January 24, 1899.

"Messrs. Albert Willcox & Company, New York, N. Y.—Dear Sirs: The gross of your bill as rendered January 14 struck us at sight as being excessive for the amount of business done. Upon investigation we find the rate in excess of the rate sheet you gave us and from $31/100$ to $60/100$ in excess of what we get from the Atlantic Mut. When you sent us the rate sheet on September 9, you stated that the rates were higher, and you would alter them later to whatever we had quoted from other companies. We inclose your bill, and will thank you to make at least 33⅓ % reduction; else we cannot go on, as business will not stand any such rate.

"Yours, very truly,					Johnston Bros." '

"New York, 7th February, 1899.

"Messrs. Johnston Bros., Columbus, Miss.—Dear Sirs: We duly received your favor of the 24th ult., and have been going into the matter of your premiums. We regret that it is quite impossible for us to compete with the rates of the Atlantic Mutual. Shippers, as a rule, find it quite impossible to use the policy of this company; but, if you are able to do so with satisfaction, we fear that we cannot hope to compete with the rates. You refer us to our letter of the 9th September, and say that we would alter the rates to whatever you had quoted from other companies. We have referred to our letter, and we cannot see that we made such a statement. We said that we inclosed a scale, which was the lowest that had been so far issued, and that, should any reduction be made later on, we would promptly advise you. No material reductions, however, have been made by any of the stock companies, and, as we have said before, we cannot obtain with the stock companies rates as low as you can get from the Atlantic Mutual, and it is fortunate for you if you can use their policy. We think that we may possibly be able to secure you a reduction of $1/16$ % all around if your business is continued with the Sea Insurance Co., but, if you decide not to go on using this policy, we fear it will be impossible to make any reduction, and we would kindly ask you to return your policy, as under it the Sea Insurance Co. are entitled to insurance on all the shipments you have made. We return you our bill, which we can reduce by $1/16$ % if we continue your business. We should be obliged if you would kindly send us a check to balance the account.

"Yours, very truly,		Albert Willcox & Co., per Douglas Franks."

"Columbus, Miss., Feb. 21, 1899.

"Messrs. Albert Willcox & Co., New York, N. Y.—Gentlemen: Your favor of the 7th instant was duly received. This reply has been delayed by the writer's absence the past ten days. The rates you charge are not only in excess of the Atlantic Mutual, but of those given by such companies as the North American to our competitors, and it will be impossible for us to go on with such a handicap. The letter that we referred to was a personal one to the writer, which we inclose, and will thank you to return. We inclose check and policy, which we suppose will conclude the whole matter. If we are mistaken, please return the check with inclosed letter.

"Yours, very truly,					Johnston Bros."

The evidence shows without conflict that Albert Willcox & Co. collected on the 23d or 24th of February the check inclosed in the letter of February 21st, and that the policy returned to them remained in their possession. No other correspondence passed between the parties until after the fire. It is contended by the plaintiff in error that it was the duty of the circuit court to decide whether the three letters rescinded the contract of insurance. It is contended by the defendant in error that that question was properly submitted to the jury by the trial court. It is unquestionably the general rule that written evidence should be construed by the court. In Levy v. Gadsby, 3 Cranch, 180, 2 L. Ed. 404, Chief Justice Marshall said that no principle is more clearly settled than that the construction of a written evidence is exclusively with the court. There are cases where writings are properly left to the jury to determine their meaning,—writings in which the words used have different meanings, and the whole is capable of different interpretations according to circumstances not made certain by the oral evidence. Brown v. McGrann, 14 Pet. 479, 10 L. Ed. 550. And where the effect of a written agreement collaterally introduced as evidence depends not merely on the construction and meaning of the instrument, but upon extrinsic facts and circumstances, the inferences of fact to be drawn from it must be left to the jury. Barreda v. Silsbee, 21 How. 146, 16 L. Ed. 86. But these modifications of the general rule have no application to a case where the writings are free from such obscurities, and are not introduced collaterally, but form the basis of the suit or of the defense. In U. S. v. Shaw, 1 Cliff. 317, Fed. Cas. No. 16,266, the question was whether the correspondence introduced in the case constituted a rescission of the contract. The court held, Clifford, circuit justice, delivering the opinion, that "the court, and not the jury, must construe the correspondence, although it may extend over a considerable length of time, and embrace a great variety of circumstances." In Bliven v. Screw Co., 23 How. 420, 16 L. Ed. 510, two letters were offered in evidence; one from the plaintiffs to the defendants, and the reply of the defendants. The trial court construed these letters, stating their effect to the jury. This action was approved by the supreme court, Mr. Justice Clifford saying:

"Written evidence, as a general rule, must be construed by the court, and the first instruction was confined to that purpose. It gives the true exposition of the correspondence, and therefore is not the subject of error."

A clear and elaborate statement of the rule is found in the case of Goddard v. Foster, 17 Wall. 123, 21 L. Ed. 589. That case involved the construction of letters that had passed between the parties in reference to a previous contract which was rescinded. The court said:

"Next error assigned is that the court erred in charging the jury that the correspondence showed an agreement between the parties distinct from the prior written agreement. which was litigated in the equity suit, but the court is of the opinion that the charge was correct, as it is well-settled law that written instruments are always to be construed by the court, except when they contain technical words, or terms of art, or when the instrument is introduced in evidence collaterally, and where its effect depends not merely on

105 F.—19

the construction and meaning of the instrument, but upon extrinsic facts and circumstances, in which case the inference to be drawn from it must be left to the jury. Where the question was whether there was a contract between two parties to be deduced from correspondence, Parke, B., said: 'The law, I take it, to be this: that it is the duty of the court to construe all written instruments. If there are peculiar expressions used in the instrument, which have, in particular places or trades, a known meaning attached to them, it is for the jury to say what is the meaning of those expressions, but it is for the court to decide what is the meaning of the contract.' Contracts are frequently made by correspondence between the parties, and in such a state of the evidence it was held in the case of Begg v. Forbes, 30 Eng. Law & Eq. 508, that the question was exclusively for the court; Jervis, C. J., remarking, 'Surely, the construction of written documents is for the judge, whether many or few in number.' Exceptional cases arise where the contract rests partly in the correspondence and partly in oral communications, in which it is held that the question whether or not there is a contract is a question for the jury. Courts of justice, however, are not denied the same light and information the parties.enjoyed when the contract was executed, but they may acquaint themselves with the persons and circumstances that are the subjects of the statements in the written agreement, and are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so to judge of the meaning of the words and of the correct application of the language to the things described."

The letters in evidence in this case are not introduced collaterally. They are made exhibits to the defendant's answer. This defense is as distinctly founded on the letters as the suit is founded on the policy. In a jurisdiction where the system of pleading permitted it a special plea of rescission would have been filed, setting out the three letters, and alleging that the check inclosed in the letter of February 21, 1899, was accepted and collected, and the policy retained by the insurance company. If the insured was advised that such correspondence and facts were not a rescission, a demurrer would have been filed to such plea. The question then without doubt would have been one of law for the court to decide,—whether the letters and ,facts stated in the plea constituted a rescission. The letters are before the court, under the system of pleading proper within the jurisdiction, as exhibits to the answer and as evidence. Their authenticity is admitted. The additional fact of the receipt and acceptance of the check is also undisputed. The result, then, depending on the written evidence and the other undisputed facts, it seems to us clearly a question of law for the court to decide whether or not they constitute a rescission of the contract of insurance. In the letter of January 24th Johnston Bros. complain of the rates charged on the policy, and request a reduction of $33\frac{1}{3}$ per cent. in the bill rendered; else they could not go on, as the business would not stand the rates charged. Willcox & Co., in their answer on February 7th, decline to make the reduction requested, but state that they might get a reduction of one-sixteenth per cent. all around if business were continued with the Sea Insurance Company; "but," they added, "if you decide not to go on using this policy, we fear it will be impossible to make any reduction, and we would kindly ask you to return your policy." The bill was returned to Johnston Bros. in this letter. The offer was made to reduce it by one-sixteenth per cent. upon condition that "we continue your business." Johnston Bros. reply to this letter, inclosing a check for the full

amount of the bill, declining to accept the offered reduction, and returning the policy, which they say "we suppose will conclude the whole matter." This correspondence begins with an expression of dissatisfaction with the charges made, and with the significant statement, returning the presented bill and asking for a reduction, that, if the reduction is not made, "we cannot go on, as business will not stand any such rate." That letter clearly means that the writers would stop business with the Sea Insurance Company unless the desired reduction was made. Willcox & Co. so interpret it. They answer proposing the smaller reduction, and, if the concessions be not accepted, they ask a return of the policy "if you decide not to go on using it." To transpose the parts of the sentence, it reads, "We would kindly ask you to return your policy * * * if you decide not to go on using it." To return the policy, even in silence, in answer to this letter, would be to say, "We have decided not to go on using it." The offer to reduce the bill "if we continue your business" is met by the significant refusal to accept the reduction, which implies that the business was not to be continued. But Johnston Bros. conclude their letter with words which show how they understand the effect of the correspondence, "We inclose check and policy, which we suppose will conclude the whole matter." We condense these letters into their substance, so far as they bear on this question: The insured writes: "Unless you reduce rates 33⅓ per cent., we cannot continue business with you." The insurance company replies: "We cannot make that reduction. If you decide not to use the policy, return it. Will reduce bill one-sixteenth per cent. if we continue your business." Insured answers: "We inclose check [for full amount of account]. We return the policy. This, we suppose, will conclude the whole matter." When the Sea Insurance Company asked a return of the policy if the insured was not going to use it, it was an offer, we think, to rescind the contract of insurance. When the insured posted a letter which was to conclude the whole matter, and which inclosed the policy, returning it, as requested, we think the contract of rescission was complete. This last letter was an acceptance of the offer to rescind. Tayloe v. Insurance Co., 9 How. 390, 13 L. Ed. 187; Utley v. Donaldson, 94 U. S. 29, 45, 24 L. Ed. 54; Patrick v. Bowman, 149 U. S. 411, 424, 13 Sup. Ct. 811, 866, 37 L. Ed. 790. Such, unquestionably, is the effect of the acceptance by the insured of the proposition if the acceptance is unqualified. The minds of the contracting parties must meet in this case as in that of other contracts. The last letter of the insured, after concluding the whole matter, added, "If we are mistaken, please return the check with inclosed letter." Does the addition of these words alter the legal effect of the acceptance? Under some circumstances that might be an important question, but in the attitude of this case it cannot affect the result. If that addition to the letter prevented the acceptance from being absolute, how long did it, on the facts of this case, keep the agreement from taking effect? If the contract was not closed by the letter, what was needed to close it? It may be conceded, for the sake of argument, that, if the check had been returned to Johnston Bros., the contract of re-

scission would have been incomplete, but it must be admitted that, if the check was accepted and collected, and not returned, the contract of rescission was then, if not before, completed. The evidence shows without conflict or dispute that the check was not returned, but was applied to the payment of the account immediately after it was received. If the policy, instead of being an open policy, had described specific property as insured, and if, after the foregoing correspondence had occurred, premiums had accrued, and the insurance company had sued Johnston Bros. for the amount due, and Johnston Bros. had defended on the ground that the contract was rescinded, could there be a recovery? They would say in defense of such suit that "differences arose between us. We asked for a reduction in rates. You declined to give it, and asked for a return of the policy. We returned it. You now have it. We wrote you, sending a check to pay a bill, when we returned the policy, saying that this closed the whole matter. We added that, if we were mistaken, please return the check. You did not return, but collected, the check, and applied it to the payment of the account." We cannot think that, on these facts, Johnston Bros. could be required to pay premiums on the policy. Their letter surrendering the policy, with the other admitted facts, would be a conclusive defense against such suit for premiums. This correspondence could not be so construed as to make the surrender of the policy relieve the insured from paying premiums, and yet make the insurance company liable if a loss occurred. We think that the circuit court should have held that the contract of insurance had been rescinded by mutual agreement.

Where the case depends on correspondence, the genuineness of which is conceded, and on oral evidence about which there is no conflict, and where such oral evidence is of a kind that different inferences cannot be drawn from it, it is the duty of the court, on request, to direct the verdict. If it would be the duty of the court to set aside a verdict if found for the plaintiff, the court should direct the jury to find a verdict for the defendant. Pleasants v. Fant, 22 Wall. 116, 22 L. Ed. 780. The evidence of the witness Johnston as to his intention in writing the letters cannot be received to affect the plain meaning of the letters. Hinds v. Keith, 6 C. C. A. 231, 57 Fed. 10, 13; Burke v. State, 71 Ala. 377, 382. If such evidence is admitted in the case without objection, it is to be disregarded by the appellate court in construing the written contract. Moody v. McCown, 39 Ala. 586. On the question under discussion —the question of rescission—there is no conflict in the legal evidence. It depends on the correspondence, with nothing needed to supplement it, unless, perhaps, the conceded fact of the acceptance and collection and failure to return the check inclosed in the letter of February 21st. The circuit court should have granted the request of the Sea Insurance Company, and directed the jury to find a verdict for the defendant.

We shall not comment on the other defense presented—that no cotton to which the policy had attached was included in the cotton alleged by the plaintiff to have been destroyed by fire. We only

mention it to say that we have given careful attention to the arguments of counsel on this question, but we refrain from expressing any opinion on it, because the question may not arise on the same evidence in the next trial, and what we have said on the other defense may be found conclusive of the case. The judgment of the circuit court is reversed, and the cause remanded for a new trial.