PITCAIRN v. PHILIP HISS CO.

(Circuit Court of Appeals, Third Circuit. October 8, 1903.)

1. CONTRACTS—MODIFICATION BY PAROL.

According to the modern view, the rule which prohibits the modification of a written contract by parol is a rule of substantive law, and not of evidence.

2. SAME—EFFECT OF ADMISSION OF EVIDENCE WITHOUT OBJECTION.

The fact that parol evidence to modify a written contract was introduced without objection in an action on such contract does not affect the right and duty of the court in instructing the jury to pass upon the competency and legal effect of such evidence, especially in a federal court, where it is the settled rule that a written contract cannot be reformed in an action at law.

3. SAME—CONTRACT FOR DECORATING HOUSE.

Written contracts for the repair and decoration of a house and furnishings cannot be modified in an action thereon by the contractor by evidence of a parol agreement, made at the time the contracts were signed, that the work should be done to the satisfaction of defendant's wife, or defendant would not be required to accept and pay for the same, no such condition being expressed in the writings.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

The contract on which the plaintiffs brought suit was made out by the following written proposals and acceptances:

"January 28th, 1899.

"Mrs. Robert Pitcairn, Pittsburgh, Pa. Dear Madam—Below please find our estimate for the complete decoration of walls and ceilings of your main, first, second and third halls.

"The protecting and cleaning of the floors and woodwork is included. The ceilings to be gilded in dull gold and overlaid with a carefully designed ornament of appropriate style, in rich Italian colors. The walls to be of rich red damask pattern, painted and glazed on canvas. The decoration of the vestibule is also included.

"We will do the above work in the most artistic and workmanlike manner for the sum of sixty-five hundred ($6,500.00) dollars.

"We also propose to repaint and regild the reception room ceiling for the sum of three hundred ($300.00) dollars.     Very respectfully submitted,

"Accepted by                          The Philip Hiss Company,
    "Mrs. Robert Pitcairn.                 Per Philip Hiss, Prest."

"January 28th, 1899.

"Mrs. Robert Pitcairn, Pittsburgh, Pa. Dear Madam:—We propose to recover, re-gimp and re-fringe two (2) sofas and five (5) chairs, in your lower hall, using moleskin mohair velvet in combination with your tapestries, for the sum of six hundred and twenty-five ($625.00) dollars.

"Also the sofa and two (2) chairs in second hall in moleskin mohair velvet for the sum of two hundred and fifty ($250.00) dollars.

"We will also re-make and re-line five and one-half (5½) pairs of portiers with moleskin mohair velvet, using your tapestry borders, for the sum of eight hundred and twenty-five dollars $825.00. All this work to be done in the best manner.                Very respectfully submitted,

"Accepted by                          The Philip Hiss Company,
    "Mrs. Robert Pitcairn.                 Per Philip Hiss, Prest."

"January 28th, 1899.

"Mrs. Robert Pitcairn, Pittsburgh, Pa. Dear Madam:—We propose to make one fine Aubusson carpet for room over dining room, for the sum of seventeen hundred and seventy dollars.................................... $1,770.00

"Also for halls of English handwoven rugs—

    No. 1, 2, 3, 4, and 5......................................... 2,425.00
    No. 6, 7, and 8.............................................. 1,382.00
    Stairs and landings ......................................... 2,233.00

    Total, including designing and laying, seventy-eight hundred dollars ....................................... $7,800.00

                              "Respectfully submitted,
"Accepted by                          The Philip Hiss Company,
    "Mrs. Robert Pitcairn.                 Per Philip Hiss, Prest."

"July 14, 1899.

"Mrs. Robert Pitcairn. Dear Madam: We will refinish, reupholster and cover in Aubusson tapestries thirty present chairs and make four new chairs to match ................................................ $5,000.00
1 rug, plain center, hand woven....................... 2,900.00

                              "Yours very truly,
"Accepted by                          The Philip Hiss Co.,
    "Mrs. Robert Pitcairn.                 Philip Hiss, President."

"Mrs. Robert Pitcairn. Dear Madam: Below please find estimate for work at your house.

"Office. Building the extension to third floor, including two bath rooms (in one of which the old fittings are to be used), also light to be introduced by side window into pantry under office. New part of office to have wood work and wall coverings in accord with old part, color of wall stuff to be selected. New rug, sofa re-covered in velour, 2 new easy chairs in velour, 2 old leather

desk chairs in hand woven tapestry, curtains for doors and windows, cost to be $8,550.00.

"Library. Ceiling repainted, walls covered in hard brocatelle, wood work refinished, caps of doors and windows made less heavy, ends of ceiling wood work refitted, new curtains and portiers of Genoaese velour, furniture recovered in same, 1 large and 2 small rugs, cost to be $7,975.00.

"Billiard Room. Ceiling and walls redecorated, tops of windows lowered, new mantel of old wood, wood work cleaned and finished, curtains of material to be selected, furniture recovered of leather of quality of present leather in new design, cost to be $4,500.00.

"Son's Room. Walls and ceilings redecorated, furniture recovered and curtains, new rug, wood work cleaned, cost to be $2,200.00.

"Daughter's Room. Walls and ceilings redecorated, wood work and mantel (shutters not included) of maple (bird's eye panels), curtains and furniture covers of damask selected, new rug, 2 bureaus, 1 bed (5' 6") and bedding, 1 easy chair, 1 rocker, 2 small chairs, 1 work table (3x2) of bird's eye maple, cost to be $5,200.00.

    Summary,

| | |
|---|---:|
| Office, baths, &c. | $ 8,550.00 |
| Library | 7,975.00 |
| Billiard room | 4,500.00 |
| Son's room | 2,200.00 |
| Daughter's room | 5,200.00 |
| Refinishing wood and floors of halls, all bed rooms (not over), about | 2,000.00 |
| Putting shutters and wood work in order, not over | 1,000.00 |
| | $31,425.00 |

"An allowance of $1,500.00 for plumbing and tiles is included in above estimate.

"No wiring or heating work included. Very truly,

"Accepted:                  The Philip Hiss Co.,
    "Robert Pitcairn.            Per Philip Hiss, President.
"September 14, 1899."

The defendant contended that the work was to be done to the satisfaction of his wife, and testified as follows: "Q. What was the conversation you had with Mr. Hiss at the time you signed this contract (referring to the $31,000 proposal which he had accepted)? A. The chief point in the conversation was that he, as well as everybody, knows that I did not attend to that business for my house; that it was entirely in the hands of Mrs. Pitcairn, and had been for over 40 years. Q. Well, was there anything said about this contract or your liability under the contract at that time? A. I declined to have anything to do with the matter, when he told me that he had come to see me at the special request of Mrs. Pitcairn, who would be very much pleased, on account of the size or amount, if I would sign it. I told him that I did not want to sign it or have much to do with the matter on account of my experience; that I was very much afraid it would be too much for Mrs. Pitcairn, but that my whole desire was to please her. Mr. Hiss distinctly stated that that was his desire, and he knew he could please her, and would please her, and desired to be distinctly understood that if he did not please her he would make no charge. Q. Did you have that distinct understanding with him immediately before you signed this contract? A. He reiterated that, and plead with me, on account of Mrs. Pitcairn, and I, on a sudden impulse, 'On that condition,' I said, 'I will sign it,' and signed it."

Mrs. Pitcairn also testified to a similar effect in regard to the acceptances signed by her: "Q. What statement, if any, Mrs. Pitcairn, was made to you by Mr. Hiss as to how this work was to be done in your house? A. When Mr. Hiss presented the design or sketch or suggestion to me I rather hesitated, and he said: 'Mrs. Pitcairn, if you will allow me to do this work, I will do it to your entire satisfaction; otherwise you will not be required to pay for it or accept it.'" And Mrs. Pitcairn is also corroborated in this by Mrs. Reese,

a niece, who lived in the house: "Q. Did you hear the conversation between Mr. Hiss and Mrs. Pitcairn shortly before these contracts were signed? A. I did. Q. Can you state what was said between the parties as to these contracts shortly before they were signed, as to how the work was to be done, and so on? A. Well, it was with regard to the hall. That was the first contract given. * * * The design was shown me, and I said, 'Well, that was pretty, if it turned out all right.' Mr. Hiss said: 'I will make that all right. I will make a grand hall of that. Mrs. Pitcairn will be perfectly satisfied; if not, she don't need to accept or pay for it.' Q. Was that said in the presence of Mrs. Pitcairn? A. It was." And again: "Q. Now, Mrs. Reese, after this contract was signed, and the other decorating was being done throughout the house, did you hear any conversation between Mrs. Pitcairn and Mr. Hiss relating thereto? * * * A. Well, Mrs. Pitcairn objected to the work not being as she desired, and Mr. Hiss said he would make it all right. He assured her he would make it all right. * * * He said: 'Let me put the things in place. Let me complete the work, and I am sure you will be satisfied. If not, you don't need to accept it. You don't have to take it or pay for it.' "

Clarence Burleigh and W. W. Smith, for plaintiff in error.

Wm. M. Hall, Jr., for defendant in error.

Before DALLAS and GRAY, Circuit Judges, and ARCHBALD, District Judge.

ARCHBALD, District Judge. According to the modern and better view, the rule which prohibits the modification of a written contract by parol is a rule, not of evidence, but of substantive law. 21 A. & E. Enc. Law (2d Ed.) 1079; Thayer's Evidence, p. 390 et seq.; 1 Greenleaf, Evidence (16th Ed.) § 350a. Parol proof is excluded, not because it is lacking in evidentiary value, but because the law for some substantive reason declares that what is sought to be proved by it (being outside the writing by which the parties have undertaken to be bound) shall not be shown. Where, by statute, a writing is required either to create an obligation or to effect a result, as in the case of deeds and wills, or of contracts within the statute of frauds, it is readily understood that it is the writing alone that is to speak; but this is equally true of contracts which by the convention of the parties have assumed a similar form. The writing is the contractual act, of which that which is extrinsic, whether resting in parol or in other writings, forms no part. If through fraud, accident, or mistake it fails to express the contract as it was intended to be made, equity will reform it upon proper proof. But still it is the writing as corrected that is the measure of the parties' undertaking, and they cannot be otherwise held. There is much admitted confusion on this subject, due in part to the way in which in some jurisdictions the rule is administered; and the failure to recognize the true basis of it is all that creates any difficulty here.

This is a suit to recover the balance due for decorating and furnishing the interior of the defendant's residence. The contract for the work was expressed in certain written proposals or estimates, aggregating some $56,000, made by the plaintiff, and accepted in writing by the defendant, or by his wife in his behalf. The jury gave a verdict of $47,000, which, allowing for a bill of extras of $3,300, and deducting admitted payments of $10,000, substantially covered the plaintiffs' claim. The defendant contended that the work, by

125 F.—8

express agreement, was to be completed to the satisfaction of Mrs. Pitcairn, and that as she was dissatisfied with it in many particulars, and as some of it had been done in actual disregard of her wishes, he was not bound to pay. No such condition appears in the writings; but Mr. Pitcairn testifies that it was agreed to by Mr. Hiss at the time he accepted the $31,000 contract, and that he signed solely on the strength of it, and Mrs. Pitcairn and her niece Mrs. Reese testify to similar assurances with regard to the others which had preceded it. Mr. Hiss emphatically denies these assertions, and says that he merely undertook to please Mrs. Pitcairn so far as he could. All this evidence was admitted without objection, and on the strength of it the defendant's counsel at the close of the case requested the court, in substance, to charge that if the jury found, as they might, that the work was to be done to the satisfaction of the defendant's wife, or otherwise he would not be bound, and that Mrs. Pitcairn, acting honestly and not capriciously, was not satisfied, even if the jury believed that she ought to have been, the plaintiff was not entitled to recover. These instructions were refused, the court saying: "The contract in suit having been reduced to writing in the shape of written propositions by the plaintiff, and written acceptances by the defendant, signed by the parties or their representatives, respectively, such written contracts cannot be contradicted or varied by evidence of an oral agreement * * * before or at the time of the execution of the contracts." The case turns on the correctness of this charge. It is contended by the defendant that, as the evidence referred to was before the jury without objection, it could not be withdrawn from their consideration, and should have been submitted to them in the way requested. But to this we cannot agree. Notwithstanding its admission, it was still for the court to declare what, as a matter of law, was the contract between the parties—whether it was to be confined to that which was expressed in the writings, or could be extended to the verbal assurances alleged to have been given outside of them. This did not depend on how the evidence came in—whether with or without objection; it still devolved on the court, instructing the jury, to pass upon its competency and legal effect, and that is all that was done in the ruling complained of. The court simply held that the writings were to be taken as constituting the agreement, and that extrinsic evidence could not be resorted to, to modify it. No error was committed in so applying the familiar rule. Whatever be the case in other jurisdictions, in a federal court a written contract cannot be reformed on the trial of an action at law, and, disguise it as we may, that is what the attempt to make effective the evidence in question plainly amounted to. The contract, as made out by the proposals and acceptances, was to do certain work of definite character and extent for certain specified prices. It may have lacked details, to be filled out by oral direction; but that it was to be done to the satisfaction of any particular person, who thereby became the sole arbiter as to whether it had been done as it ought, is nowhere suggested in it, and cannot now be supplied without introducing a most material variation, as the present controversy abundantly shows. It would have been easy for the defendant when he signed to have written, "Accepted on condition that

the work shall be done to the satisfaction of Mrs. Pitcairn," if these were the terms on which he proposed to alone be bound; and without this we must assume that what passed between him and Mr. Hiss at the acceptance of the last proposal, and between Mr. Hiss and Mrs. Pitcairn at the execution of the others, was regarded as mere assurances of the intention and ability to please, much as a salesman commends without warranting the excellence of his wares.

Neither can the alleged undertaking of Mr. Hiss be regarded as a separate agreement resting in parol outside of the writings, and constituting a condition precedent, on fulfillment of which the obligation of the principal contract was to attach. It must stand, if at all, as an added term, by which the right of the plaintiff to final compensation is measured and concluded, entering into it vitally from the start.

Unless, therefore, the rule which prohibits the introduction of extrinsic evidence is to be disregarded, the writings must be taken as expressing the contract between the parties, and there was no waiver by the plaintiffs of their right to adhere to them, and to have the case determined thereby, merely because parol evidence as to what passed outside of them was permitted to come in. The competency of this evidence, as a matter of law, to affect the writings, was not necessarily conceded by the failure to object at the time. Moody v. McCowan, 39 Ala. 586; Hamilton v. Railroad, 51 N. Y. 100. Nor were the plaintiffs precluded from raising that question without at least something to show that the defendant had been prejudiced in consequence in his proofs.

It is said, however, that the plaintiffs in their case in chief called Mr. Hiss to show that in the choice of material they were to be guided by Mrs. Pitcairn's wishes and taste, which was an important variation of the contract, and that, having given their version of the transaction, the defendant, on familiar principles, was entitled to give his. Bogk v. Gassert, 149 U. S. 17, 13 Sup. Ct. 738, 37 L. Ed. 631. But the agency of Mrs. Pitcairn and her authority to represent her husband were unquestioned. She signed four of the acceptances, covering an expenditure of $25,000, and if Mr. Pitcairn's wishes had been followed she would have signed for the whole. The entire disposition of the work, as he pointedly declares, was committed to her charge. Her selection of materials, and her expressions of taste, therefore became his, and proof that she was constantly consulted in the course of the work in no wise constituted a variation of the contract, nor opened the door for the very serious modification of it which was sought to be made. The plaintiffs simply showed that they had followed the directions of one who admittedly stood for the defendant in the transaction, not in variation of the contract, but in compliance with its implied, if not its express, terms.

The judgment is affirmed.