### SHELTON v. AMERICAN SURETY CO.

(Circuit Court, E. D. Pennsylvania. February 9, 1904.)

#### No. 84.

**1. SURETY ON BUILDING CONTRACT—DISCHARGE—PAYMENTS TO CONTRACTORS IN VIOLATION OF CONTRACT.**

Where a building contract provided for monthly estimates and payments to the contractor, but·that such payments should not be made until the contractor delivered to the architect copies of all ·bills and vouchers for work done and materials furnished, or releases of all ·liens, payments by the owner without requiring such vouchers or releases was a departure from the contract, which discharged the contractor's surety from liability for the amount of liens subsequently established against the property.

At Law. On motion for judgment for want of sufficient affidavit of defense.

C. B. Taylor, for plaintiff.

H. Gordon McCouch and Richard C. Dale, for defendant.

J. B. McPHERSON, District Judge. This case arises upon the plaintiff's statement of claim and the affidavit of defense that has been filed thereto. The facts which appear upon these papers, and, indeed, are undisputed, are as follows: The plaintiff, being about to alter a house, made a contract with a firm of builders, by which it was provided, inter alia, that the architect should value the work done and the materials furnished each month, and that 80 per cent. of his valuation should be paid to the builders. Under this provision $5,736.43 was paid in four installments. The builders then became insolvent, and the plaintiff completed the work, but he was obliged to pay $2,901.05 more than the contract price. Under the paragraphs of the contract that are now to be considered the builders were required to apply the installments received by them in payment for work done and materials furnished to the building, but, in violation of these provisions, they only applied $2,833.38, using the balance, $2,901.05 for other purposes. For this balance, included in a larger sum that embraced other claims as well, mechanics' liens were filed, which the plaintiff was obliged to pay. The present suit is brought against the builders' surety to recover $2,500 and interest, this being the principal of the defendant's bond. The paragraphs in question are as follows:

"(b) That no payments shall become due until in each case the contractors shall have delivered to the architect copies of all bills and vouchers for work done and materials furnished upon which payment is claimed to be done, or until they have given the architect a true and accurate account of the exact standing of all accounts to date, on their books, for the work herein contracted for, and shall have delivered to the owner a satisfactory release of all liens against the premises on the part of all persons, who have delivered materials for use in or performed work on said premises, together with a true and accurate showing of the state of such persons' accounts then due, or thereafter to become due, for materials to be furnished or work to be done under this agreement.

"And it is further agreed, that before the final payment shall become due a full and complete release of liens, including the liens of the parties of the first part, shall have been delivered to the party of the second part, and accepted by him as satisfactory.

"(c) That no liens, attachment or other incumbrance under any law of this state, or otherwise, by any person or persons whosoever, shall at any time be put or remain upon the building or premises, unto or upon which any work is done or may be done, or materials are furnished or may be furnished under this contract for such work or material or by reason of any claim or demand against the contractors in respect thereof.

"And it is further agreed, that if at any time there shall be any lien or claim, which if established, the owner of the said premises might be made liable, and which would be chargeable to the said contractors, the owner shall have the right to retain out of any payment then due, or thereafter to become due, an amount sufficient to completely indemnify him against such lien or claim, until the same be effectually satisfied, or discharged or cancelled, and should there prove to be any such claim after all payments are made, the contractors do hereby covenant that they will refund to the owner all moneys, that the latter may be compelled to pay discharging any lien on said premises, and obligatory in consequence of the former's default."

127 F.—47

As already stated, four installments were paid by the plaintiff, but he did not require a release of liens to be delivered in accordance with the provisions of paragraph "b," and this failure upon his part is set up as a defense. To this the plaintiff replies that the provision referred to was merely intended for his own protection, and that he was at liberty to waive it if he chose, without danger to his rights against the surety. I cannot agree to the correctness of this position. There can be no doubt that paragraph "b" was intended for the protection of the plaintiff, and perhaps primarily for his protection; but its enforcement would also protect the surety by compelling the builders to pay the workmen and materialmen as the work went on, thus diminishing the risk that the surety might suffer from the failure of the builders to fulfill their contract concerning liens. The danger of liens was provided against as carefully as possible. Before any installment could become due, copies of bills and vouchers for work and materials were to be furnished, or a true account of these subjects taken from the builders' books was to be presented, accompanied by a release from all persons entitled to a lien up to that time, together with a true showing of the accounts of such persons with the builders. But, in spite of these precautions, it was recognized that the builders might be careless, or might deceive the architect about these matters, and therefore it was provided that a further release should be given before final payment should become due; and, as even this might not fully protect the owner against the builders' neglect or dishonesty, an additional paragraph was added, giving the plaintiff a right of action against the builders if any liens should be enforced against the premises after the final payment. As it seems to me, the most important of these safeguards was the first. If these releases were demanded, bills would be paid as the work went on, for the builders could not obtain releases unless they paid the workmen and materialmen, and the result would be that debts could not accumulate and become too heavy a load for the builders to carry. If they could not pay their debts, liens would become inevitable. In the enforcement of this provision, therefore, the surety was vitally interested, and the plaintiff's failure to insist upon it is, I think, a bar to recovery.

The rule that a surety's contract may not be materially changed without his consent is well known. Recent declarations of the rule are found in Prairie State Bank v. United States, 164 U. S. 227, 17 Sup. Ct. 142, 41 L. Ed. 412, and Fidelity Co. v. United States (decided in December, 1903, and not yet officially reported) 24 Sup. Ct. 142, 48 L. Ed. —. Whether the facts of this case justify me in speaking of what was done as a change of the contract, or whether it is more accurate to speak of it as a departure from the contract, seems to be of minor importance. The same consequences follow whether it be a departure or a change. As is said by Brandt in his work on Suretyship, par. 345:

"Any dealings with the principal by the creditor, which amount to a departure from the contract by which the surety is bound, and which by possibility might materially vary or enlarge the latter's liabilities without his consent, generally operate to discharge the surety."

In a careful opinion by Judge Archbald, now on the bench of the middle district of Pennsylvania (Fitzpatrick v. McAndrew, 12 Pa. Co.

Ct. R. 353), he pronounces in favor of the word "departure," where the owner pays the builder more rapidly than the contract provides, and it may be that "departure" is the better word to use where the surety complains of a failure to require a release of liens. However that may be, it is clear to my mind that the reasoning upon which the cases were decided that hold the surety to be discharged by paying the builder more rapidly, or paying him larger amounts than the contract calls for, requires a like decision in the present case. In Calvert v. London Dock Co., 2 Keen, 639, Lord Langdale, the master of the rolls, sustained the defense that the creditor had advanced money beyond the sums that could have been called for under the contract, and he gave these reasons for his conclusion:

"The defendants do not dispute the fact that their advances to Streather exceeded the sums which they were bound to advance under the contract, but they say that the increased advances were made for the purpose of giving Streather greater facility to perform the contract. It is said that the performance of the work by Streather was impeded by his want of funds, and that by the advances made to him he was enabled to do more than he otherwise could have done; and that to assist him was to assist his sureties; and it was only for the purpose of affording that assistance that the company did more than they were obliged to do.

"The argument, however, that the advances beyond the stipulations of the contract were calculated to be beneficial to the sureties, can be of no avail. In almost every case where the surety has been released, either in consequence of time being given to the principal debtor or of a compromise being made with him, it has been contended that what was done was beneficial to the surety; and the answer has always been that the surety himself was the proper judge of that, and that no arrangement different from that contained in his contract is to be forced upon him; and, bearing in mind that the surety, if he pays the debt, ought to have the benefit of all the securities possessed by the creditor, the question always is whether what has been done lessens the security.

"In this case the company were to pay for three-fourths of the work done every two months. The remaining one-fourth was to remain unpaid for till the whole was completed. And the effect of this stipulation was at the same time to urge Streather to perform the work, and to leave in the hands of the company a fund wherewith to complete the work, if he did not; and thus it materially tended to protect the sureties.

" "What the company did was perhaps calculated to make it easier for Streather to complete the work if he acted with prudence and good faith; but it also took away that particular sort of pressure which by the contract was intended to be applied to him. And the company, instead of keeping themselves in the situation of debtors, having in their hands one-fourth of the value of the work done, became creditors to a large amount, without any security; and under the circumstances I think that their situation with respect to Streather was so far altered that the sureties must be considered to be discharged from their suretyship."

In Navigation Co. v. Rolt, 6 Com. Bench, N. S., 95 E. C. L. 550, Mr. Justice Crowder said, on page 597:

"It is obvious that a prepayment must prejudice the surety in a case like this, inasmuch as it deprives him of the benefit of that which would be an inducement to the principal to perform the contract in due time. I see nothing in the fact of the money having ultimately come to the hands of the surety to alter his position in that respect."

And Mr. Justice Willes added:

"It is clear, therefore, that there must be an assent by the surety to the creditor's dealing with the principal debtor otherwise than in the manner pointed out by the contract; and it is no answer to say that it is for the ad-

vantage of the surety, or that he has sustained no prejudice. Here there was an unauthorized payment of £2,000 to Mare, and, as this payment was made without Rolt's assent, that * *. * was such a prejudice to him, as surety, as to discharge him."

Upon appeal to the Exchequer Chamber, the judgment was affirmed, Chief Baron Pollock saying, inter alia:

"Now, certainly, prima facie the withdrawal of a fund which is security for the thing in respect of the not doing of which he is now called upon to pay damages is a prejudice to the surety. He is not in the same situation with regard to his principal in which he ought to be placed. He is deprived of the security of the fund out of which the company might in the first instance have indemnified themselves. * * * Whether there could have been any proof to show that, notwithstanding the appearance of prejudice, in reality none was or could be sustained, it is not at all necessary to inquire. It is, however, exceedingly difficult to conceive any state of things in which it must not to a considerable extent be a prejudice to a surety to have a fund withdrawn which would be in reality a security to the company with whom he is contracting and to the surety who guaranties."

Calvert v. Dock Co. was approved by Judge Baker of the Indiana District in Commissioners v. Branham (C. C.) 57 Fed. 179, where decisions to the same effect from California, Missouri, and Minnesota are also cited. In Lucas County v. Roberts, 49 Iowa, 159, the county commissioners paid a contractor in full upon the completion of certain repairs to the courthouse, thus putting in his hands more money than was sufficient to discharge all unpaid claims for work and material. He applied the money to other purposes, and the unpaid claimants filed liens, which the commissioners were obliged to pay. The sureties were held to be discharged, the court saying:

"Waiving the question whether the payment made in advance had the effect to release the sureties, we find that at the time final payment was made the plaintiff paid Roberts more than was sufficient to discharge all claims which were subsequently paid by the plaintiff to the holders of the liens.

"Conceding such liens could be lawfully established, the plaintiff was bound to so know, and the time within which they must be filed; and as it was possessed of sufficient funds to protect itself and the sureties, it was bound to hold and so apply them. The sureties had the right to expect, and good faith required, the plaintiff to hold the funds until the debts contracted by Roberts which could be established as liens were paid, or the time for filing the same had expired. Failing to take this course, but having negligently or carelessly paid the money to Roberts, the defendant should not be called upon to reimburse the plaintiff because of such negligence."

In Gato v. Warrington, 37 Fla. 542, 19 South. 883, the contractor agreed, inter alia, "to submit his weekly pay rolls, duly signed and receipted." The proof showed that the owner had advanced $3,000 to the contractor without requiring such pay rolls to be produced, and it was held that such conduct discharged the sureties, because it was a payment in disregard of the terms of the contract, and was a material departure from the agreement. Following these authorities, I am of opinion that the affidavit of defense, which is conceded to be true, is a complete reply to the plaintiff's statement of claim.

In accordance with the stipulation of counsel, I direct final judgment to be entered in favor of the defendant.