YORK CITY SCHOOL DIST. v. ÆTNA INDEMNITY CO.

(Circuit Court, M. D. Pennsylvania.   July 5, 1904.)

No. 11.

1. SURETYSHIP—CONTRACTS—OMITTED PROVISIONS—REFORMATION OF INSTRUMENT—FEDERAL COURTS—JURISDICTION.

Where, after a building contractor, who had agreed to erect a schoolhouse for plaintiff school district, had abandoned the contract, the school board and the contractor's surety entered into an agreement under which the board was entitled to finish the work at the expense of the surety, whatever its cost, the surety, in an action at law in the federal courts on such contract to recover the difference between the amount so expended and the contract price, was not entitled to have the contract reformed for the purpose of inserting an alleged omitted provision that, if the surety would waive a payment erroneously made by the school board to the contractor, and would agree to the payment of certain debts due to local materialmen and laborers, the district would finish the building within the contract price.

Rule for Judgment for Want of a Sufficient Affidavit of Defense.

N. Sargent Ross, for the rule.

Henry P. Brown and Thomas W. Barlow, opposed.

ARCHBALD, District Judge.   In January, 1902, one Harry Knerr entered into a contract with the York City school district by which he undertook to construct a certain school building for the sum of $38,300, giving a bond, with the Ætna Indemnity Company as security, for the faithful performance of his undertaking. The building was to be completed by December 15th, and a penalty of $25 a day was to be paid for every day it was delayed beyond that. There was also a provision that, in case the contractor made default, the school district might go on and complete the work at his expense. He entered upon the construction of the building, but was not able to complete it, being compelled to make an assignment for the benefit of creditors in June following. The defendant company, as surety, was notified of the difficulty, and, the parties having got together, articles of agreement under seal were entered into between them by which it

was provided that—the time limit being dispensed with—the school board should go on and complete the building with all reasonable dispatch under the direction of their building committee and the supervision of the architect previously selected, assuming the contracts for materials which had been entered into by the contractor, and taking care of the labor which had been performed, but not paid for. At the conclusion of the work a detailed statement of all materials bought and labor performed upon the building, approved by the school board, and verified by affidavit of the superintendent or architect, was to be furnished to the indemnity company, and, unless found incorrect, was to be assumed and paid. In pursuance of this agreement, and in compliance with its terms, the school district went on and completed the building at an expense of $48,634.54, which was $10,334.50 above the original contract price; but upon rendering an account of it to the defendant company and demanding payment, the latter, without calling in question the correctness of the expenditures, refused to pay, and thereupon the school district brought suit.

The defendant company, to meet this prima facie showing, rely on the following facts, which are set up in the affidavit: By the terms of the original contract, which was made a part of the bond in which the company joined, the contractor was to be paid in installments—$5,000 when the first-floor joists were laid, $5,000 when the second-floor joists were laid, and so on; a final payment of $3,300 being withheld until 30 days after the completion of the building and the return of the plans. A strict compliance with this provision, and the protection which it secured, was relied on by the defendant, as is alleged; but in disregard of it, and to the prejudice of its rights, the contractor—before anything was done—was paid some $1,700, which he appropriated to his own use. In the negotiations leading up to the agreement in suit the defendant company, as it is said, was not willing to have this credited, and neither was it willing that materials and labor which had been furnished to the contractor by local dealers and workmen, and which the plaintiffs were anxious to have taken care of, should be paid, unless the amount in the hands of the plaintiffs was sufficient to do so, and still enable them to complete the building. In order to ascertain whether this was the case, the contracts for labor and material which had been made by the contractor were examined by a representative of the plaintiffs, who reported that provision had been made for all materials and labor necessary to finish the work, and that that which had been so far furnished, together with that which was still required, could all be met by the balance of the contract price in the hands of the school board, and leave a margin of $3,000. The defendant company, as surety, having the right, as it is asserted, to complete the building, and collect the full contract price without deduction or allowance for the $1,700 improperly paid to the contractor, and the plaintiffs being anxious to avoid this loss, and at the same time to have the local materialmen and workmen taken care of, it was proposed by the school board, as it is said, that they should be allowed to go on and finish the building, which they agreed to complete within the contract price, provided the defendant would waive any right with regard to the $1,700, and would allow the outstanding contracts for labor and ma-

terials to be paid.   Upon this understanding, as it is alleged, the agreement in suit was executed, but through accident or mistake the provision with regard to the building being completed by the school board within the original price of $38,300 was omitted, as was also that with regard to the $1,700 payment.   Assuming, however, that this was sufficiently indicated in the agreement, or implied from its terms, the defendant executed it; but, if it is not to be so interpreted, it is charged that it does not correctly represent the intention and understanding of the parties, and would not have been executed by the defendant without first having been so corrected.   Whereupon the defendant claims that there is nothing due to the plaintiff, and that the rule for judgment should be discharged.

The immediate facts which are relied on to establish the alleged accident or mistake by which, as it is claimed, the writing does not express the real agreement, are not given.   But, passing this by, the defense rests, as it will be noted, on something outside of the writing, which the defendant seeks to have incorporated into it and enforced. Unless this can be done, it has no defense, being plainly liable for the amount demanded as the agreement stands.   The suggestion that the latter is capable of being interpreted to mean that the school board were to keep within the contract price has nothing whatever to sustain it.   It may be that the defendant company could have availed itself of the $1,700 improperly advanced to the contractor as a departure from the contract, even to the extent of avoiding it (Shelton v. American Surety Co. [C. C.] 127 Fed. 736), and could also have repudiated the debts due to local materialmen for what they had furnished to the building, there being no right of lien on public property.   But the time to use these as a leverage to secure advantage was when the agreement was being made.   The school board were entitled, under the terms of the original contract, to go on and finish the work at the expense of the defendant, whatever it cost.   If they succeeded in doing so within the original contract price, there would be no occasion for calling on the defendant; but if they did not the defendant was liable for the excess, this being one of the purposes for which the contractor gave bond.   The idea that under the new agreement the contract price was not to be exceeded—which would practically mean that in no event was the defendant to be held liable—could hardly have been contemplated.   But, if any such unlikely bargain was discussed, there is no trace of it to be found in the writing, and by that the defendant must abide.   If anything was omitted which would make it speak otherwise, it cannot be corrected here.   As was said in Pitcairn v. Hiss (C. C. A.) 125 Fed. 110: "Whatever be the case in other jurisdictions, in a federal court a written contract cannot be reformed in an action at law."   Such a proceeding is essentially equitable in its nature, and must, therefore, be pursued by bill, the state practice to the contrary notwithstanding.   It is not necessary to consider what would be the result if fraud in the procurement of the contract was relied upon, for there is nothing of that kind set up.

Finding no defense, therefore, to the action, the rule is made absolute, and judgment directed to be entered in favor of the plaintiff for the amount claimed in the statement.