G. H. WILTSE v. C. C. FIFIELD, Appellant.

**Partnership:** AGREEMENT: VIOLATION: EVIDENCE: INJUNCTION. In
1 this action between partners to restrain the violation of their
partnership agreement, for the manufacture and sale of a patent
article, the evidence is reviewed and held to show, that a writing,
although signed by both, did not embody the agreement of one of
the partners, but was to be rewritten, so as to show that the part-
nership was not to acquire the patent.

**Contracts:** VARIANCE BY PAROL. It may be shown by parol that a
2 writing, though signed by the parties to be charged, was not as
agreed upon, but was to be rewritten to embody provisions not
contained in the first draft.

*Appeal from Greene District Court.*—HON. Z. A. CHURCH,
Judge.

FRIDAY, JULY 2, 1909.

SUIT to enjoin the defendant from violating the terms
of a partnership agreement resulted in a decree as prayed.
The defendant appeals.—*Reversed* and *remanded*.

*Howard & Howard,* for appellant.

*J. A. Henderson* and *W. W. Turner,* for appellee.

LADD, J.—The defendant is the inventor of a gas burn-
ing tank heater, and prior to the issuance of the patent there-
on negotiated with the plaintiff with the view of forming a
copartnership for the manufacture and sale of heaters.
They orally agreed upon terms about April 5, 1905, and
stated these to an attorney with instructions to prepare ap-
propriate articles of agreement. When drawn these pro-

vided that the firm name should be the Gas Burning Tank
Heater Company, that one hundred heaters should be manu-
factured and placed on the market in the fall and winter of
that year, that plaintiff should pay as his share of the
capital $300 to be used in the purchase of material as
needed, and· that defendant should construct the heaters
and contribute as his share of the capital "all his right,
title and interest in the patent awarded him on the above-
named gas burning tank heater and to any improvements
thereon that he may be able to make thereon or have pat-
ented hereafter." After the manufacture of the above
number and reasonable effort to dispose of the same, "if
the said [G. H. Wiltse] shall think it advisable to con-
tinue said business further of manufacturing said tank
heaters. and placing the same on the market, then the time,
twenty years, or during the life of the [patent and im-
provements thereon] as aforesaid for which this copartner-
ship is formed shall continue, its capital stock, as its busi-
ness may demand, may be increased, not to exceed one
thousand ($1,000) dollars, contributions made by each of
the parties hereto shall be equal, each of the parties to con-
tribute his time and skill to said business, or so much
thereof as may be profitably employed in the business of
said copartnership." The method of closing the business
in event plaintiff should not elect to continue the partner-
ship with defendant retaining the patent was also provided
for, and a violation of the terms of the partnership by
either party was to operate as a dissolution at the option
of the other. Materials were purchased and the heaters
manufactured and sold, but disputes arose: (1) As to
whether $100 of the money contributed by plaintiff was
to be paid defendant for constructing the one hundred
heaters; (2) whether plaintiff had the right to elect to
continue the partnership after the disposition of the said
heaters; and (3) whether defendant was to contribute the
patent as a portion of his share of the capital.

Resort was had to the draft of the agreement as prepared by the attorney, but no provision found exacting payment to the defendant. The provisions quoted relating to the last two items of dispute were embodied in the draft of contract as prepared; but defendant contends this was never adopted by the parties, but was to be rewritten. He testified that, when the attorney read the paper over to the parties, he objected to them, and that the attorney stated he would mark these out, and appeared as though doing so with his lead pencil. A circumstance tending to confirm his testimony is the appearance of perpendicular lead pencil marks extending above and below the line immediately preceding and following each of the clauses to which there is said to have been objection. Plaintiff and the attorney testified that no such objection was interposed and no such marks put on the paper; but defendant swore that these were on the paper before he signed it, and his father and he that they were there when the paper was taken from the attorney to read over, and this is somewhat confirmed by the fact that the attorney, though making several changes with a pen, twice interlined with a pencil. Another circumstance tending strongly to corroborate the defendant is the indorsement in ink on the last page of the instrument of the words "To be rewritten." Defendant testified that he had said that he wished to have some one else look at the paper before signing it, but that both plaintiff and the attorney assured him this was unnecessary, as the portions to which he had objected were marked to be cut out of the contract, that the attorney stated that the paper must be rewritten, that he would do so and omit the articles objected to, and, to show this should be done, he wrote on the margin, "To be rewritten," and that he then advised both to sign so that they could go on with the portions of the contract to which there was no objection. On the other hand, plaintiff tes-

1. PARTNERSHIP: agreement: violation: evidence: injunction.

tified that the words were indorsed on the contract to show that a copy was to be furnished each party, while the attorney related that, upon being asked why he did not make two copies, he had replied that he did not care to make two until he was assured that the one was satisfactory, and that he would rewrite and make corrections so all would be in typewriting and make any part more plain which seemed doubtful and let them know.

If the object was merely as described by these witnesses, there was no occasion for noting the words on the paper, while the version of defendant not only explains this, but the pencil marks as well. Again, the relative investments of the parties tend to confirm defendant's story, for the evidence indicated that the value of labor on the one hundred heaters was about $220, and in addition to this he was to furnish the building in which, and the tools with which, to construct them against $300' to be paid by the plaintiff as needed, in the purchase of material. The evidence tended to show that the cost of material was about $2 per heater, so that about one-third of the money would not be needed for making the first one hundred. If, then, plaintiff's theory of the case were to be accepted, defendant must have undertaken to transfer the patent to the copartnership practically without consideration; at least, for much less than is ordinarily expended in procuring a patent. All the circumstances. are entirely consistent with defendant's theory of the case, but not, in the absence of explanation, with that of plaintiff. True, arrangements were made with a view of continuing the copartnership, such as renting a building in which to continue the business, purchasing a share in a telephone company in order to have its use, the purchasing of additional material, taking insurance, and plaintiff bought an undivided half interest in defendant's tools; but all these were consistent with the continuance of the partnership by mutual agreement, rather than at the plain-

tiff's sale option. The defendant concedes that the firm was to manufacture and sell without making compensation for the patent, but insists that no interest other than this was to be acquired by it. A separate examination of the record has convinced us that this is so, and that the pencil marks were on the draft of the articles when signed and made under the circumstances as claimed by defendant. If so, it was signed with the understanding that the parts between the marks were to be eliminated, and that the agreement of partnership to be adopted was to be rewritten in accordance with the understanding then had.

II. Possibly the court may have reached this conclusion, but concluded that the evidence was not admissible because of its tendency to vary the writing. Such an objection was urged, and is now insisted upon; but the writing was never adopted as the contractual act of the parties. Until so adopted, the rule which forbids the modification of the terms of a written instrument by extrinsic evidence has no application. 4 Wigmore on Evidence, section 2404; *Pitcairn v. Philip Hiss Co.,* 125 Fed. 110 (61 C. C. A. 657); *Burke v. Dulaney,* 153 U. S. 228 (14 Sup. Ct. 816, 38 L. Ed. 698); *Earle v. Rice,* 111 Mass. 17; *Southern St. Ry. Advertising Co. v. Metropole Shoe Mfg. Co.,* 91 Md. 61 (46 Atl. 513). See *Brewster v. Reel,* 74 Iowa, 506, and *Creveling v. Banla,* 138 Iowa, 47. That is, there must be a contract in writing before the inquiry as to whether it may be modified is pertinent. True, the parties had annexed their names to the paper; but this was with the distinct understanding, evidenced by an indorsement thereon, that it should be rewritten, and it was left in the hands of the scrivener for that purpose. Until rewritten it was not the final utterance of the parties in writing by which they were to be bound. As observed by Crompton, J., in *Pynn v. Campbell,* 6 El. & Bl. 370, 373:

2. CONTRACTS:
variance by
parol.

"The parties may not vary a written agreement, but they may show that they never came to an agreement at all, and that the signed paper was never intended to be the record of the terms of the agreement." The evidence has satisfied us that the writing did not represent the agreement of the parties, and that for this reason the attorney undertook to rewrite it to the end that their understandings should be accurately recorded. To show that the paper had not been adopted as evidencing the agreements of the parties the oral evidence was admissible.

III.   Having reached the conclusion that the partnership acquired no interest in the patent save to manufacture and sell the one hundred heaters and such other as they might agree upon, it is unnecessary to inquire into the propriety of the injunctional order issued, for the only violation of the articles alleged, aside from the withdrawal of the draft of the agreement from the attorney's possession, was the effort to dispose of the territory not local, within which the purchaser might manufacture and sell heaters, and of this, as seen, defendant is not in a situation to complain. But see: 2 High on Injunctions, section 1330 et seq.; 1 Spelling on Injunction and Extraordinary Remedies, section 587 et seq.; Lindley on Partnership (7th Ed.), 568. In a counterclaim defendant prayed for the dissolution of the partnership and the appointment of a receiver to wind up the affairs of the firm. As more than two years have passed since the entry of the decree, we deem it advisable to remand the cause for such action as may be appropriate in view of the evidence in the record and such as may be received hereafter.— Reversed and remanded.