## GOEHRIG v. STRYKER.

(Circuit Court, M. D. Pennsylvania. November 15, 1909. On Motion to Vacate, December 10, 1909. On Rehearing, December 13, 1909.)

### No. 165, October Term, 1908.

1. TRIAL (§ 105*)—RECEPTION OF EVIDENCE—EFFECT OF ADMISSION OF INCOMPETENT EVIDENCE.

A verdict cannot be supported by incompetent evidence alone, although it was admitted without objection.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 261; Dec. Dig. § 105;* Evidence, Cent. Dig. § 2430.]

2. EVIDENCE (§ 243*)—ADMISSIONS BY AGENT—STATEMENT AFTER TRANSACTION.

An admission is an acknowledgment of the existence of a fact, of which it is evidence only in the sense that it dispenses with the proof of it. To be binding, it must necessarily be made by the party himself against whom it is introduced, or by some one having authority at the time, to speak for him in the premises. The admissions of an agent, therefore, to bind his principal, must be made in the course of his agency, and be concerned with the furtherance of it; and a statement by an agent with respect to a completed transaction, as to which his agency has ceased, however close in point of time, is a mere declaration or narration, which is not competent evidence to affect his principal.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 887, 912; Dec. Dig. § 243.*]

3. EVIDENCE (§ 243*)—ADMISSIONS BY AGENT—EVIDENCE OF NEGLIGENCE.

Plaintiff's intestate, who was in defendant's employ, engaged in the construction of a building, was killed by falling from a gin pole on which he was rigging a block and fall. There was evidence that the leader line which held the block until hooked in the sling was not properly fastened at the ground end; otherwise, the block could not have fallen as it did. Deceased was an experienced rigger, and the only evidence tending to show any negligence or liability on the part of defendant was that his son, who was superintending the work on the building, stated that he had himself fastened the line. The testimony was that he made such a statement 15 minutes after deceased fell, and again an hour later. Held, that such statements, if made, were not competent evidence against defendant; the agency of the son with respect to the transaction having terminated before they were made.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 912; Dec. Dig. § 243.*]

4. TRIAL (§ 92*)—MOTION TO STRIKE OUT EVIDENCE—NUNC PRO TUNC ORDERS.

The filing nunc pro tunc as of the date of the trial of a motion to strike out evidence, and an amendment of the record to show a ruling thereon and exception, should not be allowed several months after the trial, when it does not appear that a formal motion was in fact made and ruled on at the time.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 92.*]

5. JUDGMENT (§ 199*) — MOTION FOR JUDGMENT NOTWITHSTANDING VERDICT — COMPETENCY OF EVIDENCE.

The motion for judgment non obstante veredicto is a searching one, which goes to the vitals of the case, and on its consideration incompetent

evidence must be disregarded, even 'though admitted without objection: and the fact that, if it had been objected to and excluded, competent evidence might have been produced. is not sufficient to warrant its consideration, where it is the only evidence to. sustain the verdict. since it was the duty of the party offering it to produce all the material evidence he had, not unnecessarily cumulative.

[Ed. Note.—For other cases. see Judgment, Dec. Dig. § 199.*]

Action by widow for death of husband by alleged negligence of defendant, and verdict for plaintiff for $8,850. Binding instructions for defendant having been refused, a rule for judgment non obstante veredicto was taken. Rule made absolute.

C. E. Sprout, H. T. Ames, and John E. Cupp, for the rule.
N. M. Edwards, opposed.

ARCHBALD, District Judge. The plaintiff's husband was killed while endeavoring to rig a block and fall to the top of a gin pole for use in the construction of a building, of which the defendant was contractor. He was an expert "rigger," and the duties in which he was engaged, while hazardous, were perfectly familiar to him. The pole was equipped with a sling at the top, into which to hook the blocks, which were drawn up to it by a light rope called a leader line, passing over a pulley, and were held in place by it while the rigger inserted the hook in the sling. The defendant was not present at the building at the time of the accident, and had not been for several days, being represented in his absence by his son, James Stryker, who superintended the job when his father was not there. The gin pole in question was properly equipped, and nothing broke or gave way; the accident resulting solely from the way it was used or operated. It was the defendant's contention that the blocks fell because they were not properly hooked into the sling by the deceased, and gave way in consequence, when he rested his weight upon them to come down.. The plaintiff claimed that the ground end of the leader line, which held the blocks after they were drawn to the top, was not fastened as it should have been, and that when the deceased. having temporarily hooked the blocks into the sling, made use of them to raise himself up. to make a permanent attachment, not being sufficiently supported, they fell, and precipitated him to the floor of the building.

There was evidence that the ground line was being looked after by Bidlack, a young man of little experience, assigned to assist the deceased, who had hold of it after the blocks had been hauled to the top, and that the deceased called out to him, as he slung himself upon the blocks to come down, to "let go the crab," meaning to unlatch the windlass, by which the rope that ran over the pulleys of the block and fall was controlled, and that, Bidlack having dropped the end of the leader line to go to the windlass and execute this order, the hook came out of the sling when the additional weight of the deceased was thrown upon it, and, not being otherwise supported, the whole thing fell. If these were the facts, no negligence on the part of the defendant was shown, and something else must be made to appear to entitle the plaintiff to recover. Realizing this, the contention is that young

Stryker, and not Bidlack, was the ground man, and that, instead of staying at his post, as he should, he tied the end of the line and went off, and the line, being insufficiently fastened, gave way, when the deceased put his weight on the blocks to climb higher, with the result which followed. The jury adopted this view, and gave a verdict for the plaintiff, and the question is whether there is any evidence to sustain it.

That James Stryker was in general charge of the work on the building, as superintendent, in the absence of his father, has been already stated. But that he had anything to do with the setting up or the operation of the gin pole, either before or at the time of the accident, is denied; and that he was not there when the deceased fell to his death, and had not been for anywhere from 5 to 15 minutes, is conceded, his absence, in fact, being the subject of complaint, and in part, at least, the basis of the charge of negligence. No negligence, however, can be predicated upon the fact that he was not there, unless he was the ground man, relied on by the deceased to look after the line while he went up the pole. And the only evidence that he was, are certain admissions, alleged to have been made by him, after the accident had taken place. It is testified, for instance, by John S. Goehrig, a brother of the deceased, himself a rigger, who was at work 600 or 700 feet from the building, and got to the spot within 10 or 15 minutes afterwards, that, as they were lifting the body of the dying man to take him home, he, the witness, looked up and saw James Stryker standing there, and asked him, "Who was the ground man?" and he answered, "I was;" and, "Who tied the leader line?" and he said, "I did;" at the same time pointing out a place in the floor where it had been fastened to a beam. About an hour later, also, at the house of the deceased, according to the testimony of several members of the family who were present, the same question was put by another brother, Reno Geohrig, also a rigger, and the same response made to it, accompanied by the further statement by young Stryker, according to some, that while he was not there when the deceased fell, having gone to a cigar store a few minutes before, he knew that everything was safe on the ground when he left, because he himself did the tying.

This evidence came in without objection; it being frankly conceded by plaintiff's counsel that, as then advised, they considered it admissible. It is now contended, however, that it was not, and that, even though no objection was made to it at the time, it was not competent to affect the defendant, who could not be bound by the declarations of an agent, not made in the course of the transaction, but after it was at an end, descriptive of what had already taken place. That no objection was interposed to the reception of the evidence is persuasive of its competency; but if, upon further consideration, it is found to be otherwise, there being no evidence outside of it to charge the defendant, and the verdict in that view being left without anything to support it, there is no reason why it should not be controlled, and the case disposed of as though it had not been received. Pitcairn v. Hiss, 125 Fed. 110, 61 C. C. A. 657.

An admission is an acknowledgment of the existence of a fact, of

which it is evidence only in the sense that it dispenses with the proof of it. 1 Elliott, Ev. § 220; 16 Cyc. 938. To be binding, it must necessarily be made by the party himself against whom it is introduced, or by some one having authority, at the time, to speak for him in the premises. The admissions of an agent, therefore, to have this effect, must be made in the course of his agency, and be concerned with the furtherance of it; it being only as he stands as the representative of his principal in the matter to which they relate that this is true of them. 1 Elliott, Ev. § 252; 16 Cyc. 1003. Mere declarations after the fact, and unconnected with the prosecution of his agency, are no more admissible against his principal than those of an entire stranger. The subject is very much confused by the efforts which are constantly made to get in the statements of an agent, under the guise of their being a part of the res gestæ. But they are admissible as such only when they enter into the occurrence as a constituent fact, and not as mere declarations, and where this is not the case they have no evidentiary value. 1 Elliott, Ev. § 252; 16 Cyc. 1007, 1008. After the transaction is complete, any statements with regard to it, from whatever source, become purely descriptive of the event, and are not within the province of the agent to make; his agency not being to that end. The proximity to the occurrence may inspire the belief that, as a narrative of it, the statements are true, and this may account for their acceptance at times by the courts, as by the common mind, when the principle involved is not kept in view. But, on the other hand, if not manufactured in the desire to incriminate some one, as they easily, if not often, are, they are liable even more than the ordinary admissions to be incorrectly reported, if not altogether misunderstood, and clearly on principle are not to be received. The declarations of a bystander, describing the incident immediately afterwards, have the same persuasive force; but that does not make them evidence to bind any one, which the fact that the person making them happens to bear a representative relation to the party against whom they are brought forward does not change. No doubt there are cases where the distinction is not observed; the nearness of the declarations to the incident being accepted as the guide. Hanover R. R. v. Coyle, 55 Pa. 396; Shafer v. Lacock, 168 Pa. 497, 32 Atl. 44, 29 L. R. A. 254; Coll v. Easton Transit Co., 180 Pa. 618, 37 Atl. 89; Kansas City R. R. v. Moles, 121 Fed. 351, 58 C. C. A. 29; Sample v. Consolidated R. R., 50 W. Va. 472, 40 S. E. 597, 694, 57 L. R. A. 186.

But the law for this court is laid down in Vicksburg & Meridan R. R. v. O'Brien, 119 U. S. 99, 7 Sup. Ct. 118, 30 L. Ed. 299, approved in Boston & Albany R. R. Co. v. O'Reilly, 158 U. S. 334, 15 Sup. Ct. 830, 39 L. Ed. 1006, where it was held that the declarations of a locomotive engineer, made within a few minutes after an accident, as to the speed at which he was running when the accident happened, were not admissible to charge the company. "His declaration, after the accident had become a completed fact," says Mr. Justice Harlan, "and when he was not performing the duties of engineer, that the train, at the moment the plaintiff was injured, was being run at the rate of 18 miles an hour, was not explanatory of anything in which

he was then engaged. It did not accompany the act from which the injuries in question arose. It was in its essence the mere narration of a past occurrence, not a part of the res gestæ—simply an assertion or representation, in the course of conversation, as to a matter not then pending, and in respect to which his authority as engineer had been fully exerted. It is not to be deemed part of the res gestæ simply because of the brief period intervening between the accident and the making of the declaration. The fact remains that the occurrence had ended when the declaration in question was made, and the engineer was not in the act of doing anything that could possibly affect it. If his declaration had been made the next day after the accident, it would scarcely be claimed that it was admissible evidence against the company. And yet the circumstance that it was made between 10 and 30 minutes—an appreciable period of time—after the accident cannot, upon principle, make the case an exception to the general rule."

In the present instance the statements made by James Stryker at the house of the deceased, an hour after the accident, were inadmissible upon any theory, being altogether too remote in point of time, if that is a controlling consideration, to make them part of the res gestæ, according to which alone, in any event they could be introduced. But so equally were those at the building, when the deceased was being removed, 10 or 15 minutes after the accident; the occurrence as such being closed, and the circumstances, by which the responsibility for it was to be determined, being complete. His declaration then as to his part in it, if any, was narrative merely, being individual and personal, and having nothing whatever to do with his being superintendent of the job. It was his mere say-so, which was incompetent to change or color any fact, and so inadmissible to make evidence against this principal, any more than in his favor, if it had happened to be the other way. If, before the accident had taken place, on inquiry from the deceased as to who was going to act as his ground man, he had been heard to say that he was; or if, as he was about to leave the building, he had told Bidlack to take his place in looking after the end of the leader line; these would be examples of declarations, made by an agent in the course of his employment, which would be effective to bind his chief. They would be facts, and not a mere recital of them; the one being an assurance to the rigger that he could rely on his assistance; and the other a direction to a subordinate, by which at the same time, his own relation to the work in hand was defined. But when the man had fallen, and all that entered into the fatality had passed, any statement then was after the fact, and no more competent to bind his superior than that of any other person there.

If this be correct, the verdict cannot stand. The blocks fell, and the deceased was killed, because they were not supported as they should have been. And this was due, in part at least, to the fact that the end of the leader line was not secured. If it had been, even though the hook was not properly inserted in the sling, the blocks would not have come down. No doubt the hook would have sustained them by itself, and the deceased was responsible, of course, for that. But if the attachment which he made was only temporary, and not intended

to be permanent, and he relied on the blocks being held by the leader line until he had finally adjusted them, of which there is some evidence, and as the jury have apparently found, the accident is not to be laid at his door. But neither upon this showing, without more, is there anything by which the defendant can be held. It is only as he is made responsible for the leader line being as it was that this can be done. And the declaration of young Stryker that he was the ground man, and tied the line, is all there is for that. So far as the defendant is concerned, however, this was mere hearsay, and it matters not that it was received in evidence, if it had in fact no legal force. Pitcairn v. Hiss, 125 Fed. 110, 61 C. C. A. 657; Hamilton v. Railroad, 51 N. Y. 100. Moody v. McCown, 39 Ala. 586.

At the close of the case the defendant moved to strike out this evience, and to have a verdict directed in his favor; nothing having been shown without it by which he could be charged. These motions should have prevailed. And the verdict for the plaintiff having been taken subject to the point reserved, whether under all the evidence she was entitled to recover, the defendant has the right to have the case disposed of now, the same as it should have been then. The verdict must stand, if at all, on the competent, and not the incompetent, evidence, and the latter, having no sustaining force, is to be taken as though it was not in. It follows, therefore, there being no competent evidence to hold the defendant, that the verdict cannot be sustained.

Judgment is therefore directed to be entered in favor of the defendant non obstante veredicto on the point reserved.

### On Motion to Vacate Motion to Strike Out Testimony.

(December 10, 1909.)

N. M. Edwards, for the motion.
J. E. Cupp, opposed.

ARCHBALD, District Judge. Pending the disposition of the rule for judgment non obstante veredicto, a motion was made by counsel for the defendant for leave to file, as of the date of the trial, a motion to strike out as incompetent the evidence of admissions made by James Stryker with regard to his part in the accident, and to have an exception noted to the refusal of the court so to do. Such a motion was said to have been made at the trial in connection with the argument by counsel of a request for binding instructions in favor of the defendant, and, not being shown by the record, the present motion was made to supply the deficiency. It was sustained by the affidavit of counsel, and, corresponding as it did with my general recollection on the subject, the amendment was allowed as prayed for. Unfortunately, however, this was done without notice to counsel for the plaintiff, and it is now made the subject of complaint in consequence; it being denied that it correctly represents what happened, no question having been raised, as it is said, with regard to the admissibility of this evidence, nor any request made to strike it out, until after the jury had been charged and retired, and then only in an informal and per-

functory manner. I regret that action was taken by the court without first hearing from the plaintiff, and without being fully advised in the matter, and the motion to vacate the order referred to, which is now made, is the not unnatural consequence.

The stenographer's notes show nothing, but neither do they show the request for binding instructions, which was undoubtedly made; it being in the course of the argument of this request, as it is claimed, that the motion to strike out was offered. These notes are, therefore, of no assistance, and in no event, of course, would they be controlling. With due respect to the ordinary accuracy of shorthand reports, they are not infallible, and the court is not bound by what the stenographer may or may not see fit to set down, according to his conception of what is or is not important. After the 10 months which have elapsed, however, my own recollection is not so clear as it might be, and I confess that I am considerably unsettled as to what took place, after hearing from the plaintiff's counsel. That some suggestion was made about striking out the evidence in question, after an intimation from the court that it was incompetent and would have been excluded upon timely objection, seems to be conceded. But that it took definite shape, or was made in season to affect the trial, or be entitled to a place on the record, is strenuously denied, and is certainly doubtful. Entertaining such views, as I have from the start, with regard to the incompetency of this evidence, it is hardly possible, if a motion had been made, that I would either have refused it, or gone on in the face of it, and submitted the case to the jury, when I knew that this was all there was to sustain a verdict. Whatever reference to the subject was therefore made, it is my best judgment that no formal motion to strike it out was tendered, and certainly no exception was taken to the refusal of it, by which the action of the court would have been preserved and brought upon the record. If there was anything, it was nothing more than a passing suggestion, which was not pressed, and is not, therefore, entitled to be revived and put in shape by a nunc pro tunc order, so as to be considered and made the basis of decision on the motion for judgment non obstante veredicto. The record on which that judgment must stand is the record as it was made at the trial. And while it is not above amendment to correct mistakes, or supply omissions, it is not to be pieced out by anything which has the appearance of an afterthought, or which was not deemed of enough importance at the time to be noted and made the subject of exception. Under all the circumstances, I am convinced that in allowing the nunc pro tunc order an undue advantage was accorded to the defendant, and that it must be recalled and vacated in consequence. If a motion to strike out was in fact made, which is doubtful, it was made in such a casual and inconsequential way that it cannot be insisted on and given place by such an order.

The order, amending the record so as to show that a motion was made at the trial to strike out the evidence of admissions of James Stryker with regard to his participation in the accident, and that an exception was taken by the defendant to its refusal, having been unadvisedly made, is therefore set aside and vacated.

On Rehearing of Motion for Judgment Non Obstante.

(December 15, 1909.)

N. M. Edwards, for the motion.
John E. Cupp, opposed.

ARCHBALD, District Judge. Notwithstanding the vacating of the order allowing the entering nunc pro tunc of the motion to strike out the evidence with regard to the admissions of James Stryker, the defendant's superintendent, I see no occasion to disturb the judgment for the defendant non obstante veredicto, which has been entered. It is, true that in entering that judgment it was assumed that a motion to strike out was made, and the position was taken that, as it ought to have prevailed, it therefore left the verdict with nothing to stand on. But, regardless of whether it was made or not, the same conclusion is to be reached; the evidence, although admitted, being clearly incompetent, and the case having to be ruled on the competent, and not the incompetent, evidence. The motion for judgment non obstante veredicto is a searching one, which goes to the vitals of the case, and if there is any weakness in the proofs it finds and uncovers it. The reception of incompetent evidence does not change the character of it, and it matters not whether or not objection was made to it. As said in Hamilton v. New York Central R. R., 51 N. Y. 100: "It does not follow that the omission to object to testimony is a concession that it is competent." Where, therefore, as in that case, a passenger was wrongfully ejected from a train for failure to produce a ticket or pay his fare, but afterwards, upon the mistake being discovered, was refunded what he had been compelled to pay on another train, in an action of trespass for the injury, it was held that any slander or abuse of the passenger by the conductor at the time of returning his money was not competent to bind the company, and that a request for instructions to that effect should have been given; the failure to object to the introduction of the evidence being of no consequence. So, in Moody v. McCown, 39 Ala. 586, where parol evidence was admitted which tended to vary the agreement of the parties as expressed in a written contract which they had executed, it was held that, being incompetent for that purpose, it must be disregarded and the writing construed according to its own terms, and that it made no difference that the parol evidence came in without objection. In Chesapeake Transit Company v. Walker (C. C.) 158 Fed. 850, also, after evidence directed to establish the damages resulting from the breach of a contract to build a railroad had been received and submitted to the jury, the jury having failed to agree, the court, upon further consideration, being convinced that a recovery could not be sustained on it, directed a verdict for the defendant; and this was affirmed on appeal. (C. C. A.) 169 Fed. 543. See, also, Pitcairn v. Hiss, 125 Fed. 110, 61 C. C. A. 657.

There is nothing to the contrary in First Unitarian Society v. Faulkner, 91 U. S. 415, 23 L. Ed. 283. In that case the plaintiff sued for services as architects in making plans for a church, and a conversation with the pastor was given in evidence. Objection was made that his

authority was not shown, and the plaintiffs thereupon offered to follow this with proof that he was the duly authorized agent of the church in that behalf, and that the congregation subsequently acquiesced in what he had done. No such proof was in fact made, and the case closed without further reference to it. The case was submitted to the jury, however, upon a theory which made this evidence immaterial, and it was held that, in view of this, as well as the failure of the defendants to call attention to the omission, the judgment should not be disturbed. It is manifest that this is entirely different from anything which we have here. Not only was the evidence as to the conversation with the pastor, even if erroneously admitted, harmless; but, being competent when it was received, the court could not be convicted of error because the accompanying offer which made it competent was not complied with, which the defendants acquiesced in by their silence. In no view was the verdict made to rest, as here, on incompetent evidence, which was not effective to sustain it.

It is said, however, that, if objection had been made at the time, the plaintiff possibly could have supplied the deficiency, and that the case ought not to be thrown out of court for want of proof, which might have been cured by other evidence, had attention been properly called to it. But it is incumbent on a party to bring forward all the evidence that he has; and, except where it is unnecessarily cumulative, there is no objection to duplicating it, particularly as to essentials. Neither can there be any just complaint that, where a party has not proved all that he could, the little that he has proved is adjudged insufficient. The people are interested that litigation should be brought to an end once for all, when it can be, and this is more than ever to be adhered to in these days, when complaint is being made of the law's delays, and the existing facilities for securing proofs are so abundant. The crucial point in the present case admittedly was the alleged declarations of James Stryker as to his participation in the accident. Without this no case was made out; and, so far as appears, this was all the evidence which the plaintiff had to rely on. But incompetent evidence is the same as no evidence, and, notwithstanding that it is let in, on a motion non obstante veredicto, it can be given no force, and is the same as though it was not. The case as it stands, therefore, is in this plight: That there is no effective evidence by which the defendant can be held liable, and therefore nothing upon which the verdict can be sustained. If there was other evidence which the plaintiff could have supplied, while it might be ground for a new trial, the discretion of the court being appealed to, it will not do to withhold judgment and overturn what has been done on the mere possibility of it.

The judgment for defendant non obstante veredicto will therefore stand.